UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SIRITA PAYTON** : | |
| **6129 FIRST PLACE, NE** : | |
| **WASHINGTON, DC 20011,** : | |
| : | CASE NO. _____ |
| **Plaintiff,** : | |
| v. : | |
| : | |
| **DISTRICT OF COLUMBIA** : | |
| **DEPARTMENT OF INSURANCE,** : | |
| **SECURITIES AND BANKING** : | |
| **c/o KARIMA WOODS, COMMISSIONER** : | |
| **IN HER OFFICIAL CAPACITY** : | |
| **1050 1ST Street, NE, 8th Floor** : | |
| **Washington, DC 20002,** : | |
| : | |
| **SHARON SHIPP IN HER OFFICIAL** : | |
| **CAPACITY** : | |
| **DEPUTY COMMISSIONER FOR MARKET** : | |
| **COMPLIANCE** : | |
| **DISTRICT OF COLUMBIA** : | |
| **DEPARTMENT OF INSURANCE,** : | |
| **SECURITIES AND BANKING** : | |
| **1050 1ST Street, NE, 8th Floor** : | |
| **Washington, DC 20002,** : | |
| : | |
| **KATRICE PURDIE   IN HER OFFICIAL** : | |
| **CAPACITY** : | |
| **CHIEF OF POLICY AND ADMINISTRATION** : | |
| **DISTRICT OF COLUMBIA** : | |
| **DEPARTMENT OF INSURANCE,** : | |
| **SECURITIES AND BANKING** : | |
| **1050 1ST Street, NE, 8th Floor** : | |
| **Washington, DC 20002** : | |
| : | |
| **and** : | |
| : | |
| **THE DISRICT OF COLUMBIA** : | |
| **OFFICE OF THE MAYOR** : | |
| **SERVE:     OFFICE OF THE ATTORNEY** : | |
| **            GENERAL** : | |
| **441 4th Street, NW, 6th Floor,** : | |
| **Washington, DC 20001,** : | |
| : | |
| **Defendants.** : | |

1

## COMPLAINT

1. Jurisdiction of the Court is founded on D.C. Code §§ 11-921 and 13-423(c), 12-101 and 16-2071, and pursuant to 42 USC 1983; the Fourteenth Amendment to the United States Constitution and the common laws of the District of Columbia.

2. Plaintiff is an adult resident of the District of Columbia who was an employee of the District of Columbia Government with the Department of Insurance Securities and Banking. Plaintiff herein pleads facts which withstand the rigors of Rule 12(b)(6) her complaint contains sufficient factual matter, which state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Her well-plead factual allegations with reasonable inferences from those allegations below are in a plaintiff's favor. *Sissel v. U.S. Dep't of Health & Human Servs.,* 760 F.3d 1, 4 (D.C.Cir. 2014). Plaintiff inferences are supported by the facts set out in this complaint." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). Here, Plaintiff legal conclusions are fully supposed by factual allegations. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

3. Defendants Department of Insurance Securities and Banking ("DISB") and the District of Columbia may be served with a summons and complaint by service upon its designated agent for service of process.

## FACTS

4. Plaintiff began employment with the Department of Insurance, Securities and Banking on October 24, 2011, as a Clerical Assistant. This position was one of three positions in that

department. Those positions consist of the Administrator, the Intake Specialist, and the Foreclosure Scheduler.

5. In November of 2011, Plaintiff's co-worker who was in the role of Foreclosure Scheduler was terminated from her position. The Foreclosure Administrator needed to fill the position of scheduler. Plaintiff was trained on scheduling for the Foreclosure Department. Plaintiff also began preforming scheduling position description duties after she was trained by the Foreclosure Administrator.

6. In mid to early February of 2012, Plaintiff's immediate supervisor was terminated from her position as the Foreclosure Administrator leaving vacant the position which Plaintiff was required to fill in her day-to-day duties. These duties of the Foreclosure Administrator were well above of the position description in her OPF and were two grade levels above her actual pay scale.

7. Plaintiff then had the responsibilities of *all three* roles in the Foreclosure Department and assuming the roles of the Foreclosure Administrator and the Foreclosure Scheduler, while also performing her duties as Foreclosure Intake Specialist. All of these duties exceeded the duties in her position description and were in fact within the PD of a grade 13.

8. On or about March of 2012, DISB hired a second person in the Foreclosure Department who Ms. Payton was required to train in all duties of the Foreclosure Department.

9. On or about 6/17/2012 DISB hired a new Foreclosure Administrator at a grade 12 who Ms. Payton was required to train on all databases, as well as on engagement with the supervisors at the Recorder of Deeds, and all vendors.

10. On or about February of 2015, Plaintiff's co-worker who had been hired as Foreclosure Scheduler left the Department for a position in a different agency department.

11. On or about March 2015 Plaintiff's supervisor resigned from his position and Plaintiff was again tasked with handling all three roles with the department.

12. On or about January 9, 2017, Brian P. Williams, a new Associate Commissioner of Banking was hired. Mr. Williams was aware that the Plaintiff was the only person performing all position descriptions and handling all three positions within the Foreclosure Department. Mr. Williams met with the Plaintiff and instructed Plaintiff to report directly to him the new Associate Commissioner of Banking.

13. Plaintiff reported directly to Mr. Williams until May of 2018, when Plaintiff was advised by vendors that Charles Burt was her supervisor. Plaintiff had to go to Human Resources in order to learn who her supervisor was and to whom she should report. In a discussion with Human Resources Chief of Policy and Administration Katrice Purdie, Plaintiff learned that Mr. Burt was hired as her supervisor on June 19, 2017, and that Plaintiff should have been introduced to him as her new supervisor. Plaintiff was not notified and had never reported to Mr. Burt until one year later when Plaintiff was asked if she would work in the Student Loan Department.

14. On or about June of 2018, Plaintiff learned from the department vendors that Mr. Burt had been speaking poorly of her and Plaintiff immediately went to the Department Associate Commissioner of Banking, Mr. Brian P. Williams, who convened a meeting with Plaintiff Payton and Mr. Burt. At the meeting, Plaintiff reported the facts, and vendors were called as witnesses to support Plaintiff's claims.

15. Human Resources Chief of Policy and Administration Katrice Purdie also asked that Plaintiff meet with her to discuss the matter. In the meeting Ms. Purdie stated that Mr. Burt had no experience in foreclosure and that his actions were unacceptable. She furthered

stated that the then Commissioner Stephen Taylor was aware of the facts when he was interviewed but he insisted on giving with Mr. Burt for the position because they were mutual friends. Ms. Purdie stated that Plaintiff technically should be working within her scope of work and not assuming the position of administrator. However, Plaintiff continued to be tasked with the additional duties.

16. On or about September of 2018, Plaintiff was asked to train her supervisor Charles Burt who was a grade 14 at that time, while Plaintiff continued to be paid at a Grade 7. Plaintiff immediately sought help from the union and was only to perform duties that she was hired to do. Plaintiff reached out to Ms. Purdie via email asking her who would be handling her performance evaluation since she learned that Mr. Burt was her new supervisor. Plaintiff never received a response from Ms. Purdie. Plaintiff filed a formal complaint because her Performance Review was done by Charles Burt who had not been her supervisor for 3 months and who graded her poorly because Plaintiff did not train him to do his job. In the previous years since Plaintiff has been employed by the District of Columbia Government, she has met her goals and has also had a score of 3 or more. Plaintiff's review was done when she was out of the office. She had no opportunity to review, sign, or meet to discuss the information in the Performance Review. Plaintiff was forced to go to Human Resources to have her Performance Review unlocked so that she could review it. Once Plaintiff had a chance to review the Performance Review, she immediately filed an appeal. Plaintiff was never interviewed as required by the three (3) employees selected to review her appeal. The employees only reviewed notes or statements and Plaintiff's appeal was denied.

17. Plaintiff filed a Grievance against the agency.

18. On or about January or February 2019 Plaintiff's position was made permanent although her position should have been made permanent in the years prior, but Human Resources, Chief of Policy and Administration Katrice Purdie failed her obligation. Ms. Purdie never spoke with Plaintiff. Rather she had Plaintiff meet with Human Resources Specialist Marlene Simmons to review her paperwork and to have the Plaintiff sign the document that made Plaintiff's position permanent.

19. According to the Union when a Union Employee agreement Section E "Employees in term or temporary appointments shall be converted to permanent appointments," consistent with D.C. Official Code.

20. Plaintiff's grievance against the agency was again wrongfully denied by Dana Shepperd, the then Acting Deputy Commissioner.

21. Mr. Burt on several occasions bullied and threatened Plaintiff with a poor Performance Review and with being "written up" with a report to Human Resources if she did not complete his work or train him. Plaintiff again was denied her constitutional rights.

22. Mr. Burt continued to provide consumers with incorrect information and asked Plaintiff to clean up his mistakes. Mr. Burt gave incorrect information to vendors regarding Housing Counselors and Mediators. Mr. Burt issued Mediation Certificates to lenders with incorrect information but pressed Plaintiff to, "clean it up." Plaintiff Payton again was denied her rights.

23. On or about April of 2019 Mr. Burt was terminated from his position. Plaintiff was again forced into the role of having to handle all three Foreclosure Department positions, without being appropriately compensated.

## **RETALIATION**

24. On or about November 16, 2018, after Plaintiff had filed a grievance against the agency, Plaintiff applied for a Consumer Services Specialist position that had opened within the agency. The interview process had begun, and Plaintiff inquired with the main Human Resource Office why she had not been given the opportunity to interview and where she stood regarding her ranking for the open position. Plaintiff, was told by then Direct of the Compliance Analyst Division, Sharon Shipp, that the agency was not conducting internal interviews. Yet the employment announcement was open to the "General Public." Ms. Shipp told Plaintiff "That she was instructed not to interview any Department of Insurance Securities and Banking employees by then Acting Deputy Director Dana Sheppard." Nonetheless, the position was filled by an applicant who was employed with DISB after Plaintiff was falsely told that no inside interviews would be conducted. This was done in retaliation for Plaintiff's lawful complaint. She was denied equal protection of the law.

WHERFORE, Plaintiff respectfully requests an award of all back pay along with $250,00.00 in damages and lost wages and punitive damages, and such other and further compensation that is deemed appropriate. Plaintiff respectfully requests a **trial by jury**.

RESPECTFULLY SUBMITTED,

__/s/ William G. Dansie_____
William G. Dansie, Esquire #385076
406 5th Street, NW, Lower Level
Washington, DC 20001
202-783-1597
william@dansielaw.com
Counsel for Plaintiff

7